**UNITED STATES of America,**

v.

**Anthony Di LORENZO, Defendant.**

**No. 69 Cr. 598.**

United States District Court
S. D. New York.
Nov. 17, 1969.

Robert M. Morgenthau, U. S. Atty., S.D.N.Y., by, Jack Kaplan, Asst. U. S. Atty., New York City, for plaintiff.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, Herald Price Fahringer, Buffalo, N. Y., of counsel, for defendant.

MANSFIELD, District Judge.

Defendant is charged in two counts with transporting 2,600 shares of stolen IBM stock from New York to Gettysburg,

Pennsylvania on January 25, 1967, and conspiring to do so in violation of 18 U.S.C. §§ 2314 and 371. On November 10, 1969, one week before the date set for trial, defendant moved for the following pretrial relief:

(a) Dismissal of the indictment, or a continuance, or a change of venue, because of pretrial publicity.

(b) Suppression of a tape recording of statements made by the defendant.

(c) Discovery of other statements made by defendant.

(d) Discovery of "all other materials to which he is entitled under Rule 16," F.R.Cr.P.

(e) Discovery of material "favorable to the accused" under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), including the identity of Government witnesses and the sources of the Government's information.

(f) Disqualification of myself, pursuant to 28 U.S.C. § 144, as the judge presiding at the trial of this case.

(g) Suppression of the stock certificates referred to in the indictment.

(h) Disclosure respecting the type of evidence produced before the grand jury which returned the indictment.

### Pre-trial Publicity

In support of his motion for dismissal of the indictment, change of venue, or continuance of the trial on grounds that there has been so much pre-trial publicity that it will be impossible for him to obtain a fair trial, defendant annexes to his moving papers copies of three newspaper articles that appeared on July 31 and August 1, following his arraignment, and a copy of a portion of a newspaper article that appeared on August 27, 1969. No page numbers are included on the clippings presented, but it appears that the paragraph referring to defendant in the August 27 article appeared on an inside page close to the end of a lengthy article on stock thefts generally which did not otherwise refer to him, and that the August 1 article appeared at page 67 in the New York Times. Defendant also claims that two television stations carried statements made by the United States Attorney for this district on the evening of defendant's arraignment including prejudicial references to the defendant, and alleges on information and belief that "there are other publications i. e., national magazines, newspapers and other periodicals" which carried articles about defendant containing material derogatory to him. No details are furnished as to the alleged prejudicial or derogatory nature of the material.

More than 3½ months have elapsed since the three newspaper stories covering defendant's arrest, none of which were on the front page or bore banner headlines. The fourth story appeared over 2½ months ago and the reference in it to the defendant was buried at the end of a lengthy article not otherwise referring to him. This case does not remotely approach the degree of publicity in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), and does not indicate any possibility of saturation of the jury panel with prejudice. In any event on September 30, 1969, the defendant expressly disclaimed any intent to seek a change of venue or to request a continuance. The present application, coming at the eleventh hour is, therefore, without merit, and the proper way of determining whether the jury panel has been affected by prejudicial publicity is to conduct a careful voir dire examination upon selection of the jury rather than grant a continuance. See In the Matter of the Application of Roy M. Cohn, 416 F.2d 440 (2d Cir. Sept. 17, 1969).

### Motion to Suppress Defendant's Recorded Statement

At a pre-trial conference on November 3, 1969, the Government disclosed the existence of a tape-recording of state-

ments made by the defendant which the Government proposed to offer at trial, and agreed to permit defendant and experts chosen by him to read the transcript of the recording, listen to it and inspect the original tape and other equipment, one week before trial. On November 10, 1969, defendant and his two attorneys read the transcript and listened to the recording. They were also furnished with a copy of the transcript and informed of the time, place and circumstances of the conversation and recording.

It appears that a person known to the defendant, whom the Government will call as a witness at trial, recorded the conversation between the defendant and himself by means of a concealed recording device with which the witness was equipped by the Government.

■ Defendant's contention that he is entitled to a hearing to develop facts concerning the recording of defendant's statement upon which to base an argument for suppression under Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), and various other cases, must be rejected. We are bound by the recent decision of this Circuit in United States v. Kaufer, 406 F. 2d 550 (1969), which held that one party to a conversation may not assert that his Fourth Amendment rights have been violated when a recording made by another party to the conversation is introduced in evidence at his trial, at least where the person recording the conversation takes the stand. Defendant urges that the Kaufer case is distinguishable

from that before us in that in *Kaufer* the recording was done by an agent of the Government, known by the defendan to be an agent, whereas here the recording was done by a private individual. Given the language of the *Kaufer* opinion, we think this is a distinction without any legal significance. The emphasis in *Kaufer* is upon the recording as a means of preserving the recollection of the party making it; as corroborative of his direct testimony to the conversation in which he took part. The assumption-of-risk analysis is not based upon the fact that the person with whom the defendant conversed in *Kaufer* was a known Government agent but upon the fact that in conversing with a third person, whether or not an agent, he assumes the risk. Having assumed the risk that such a third person might testify, he automatically takes the risk that the other person may also record what is said. Thus it is the risk of testimony in the first place, not the risk that it may take a more or less convincing form, that is significant.

Defendant does not suggest that the person who made the recording in this case will violate defendant's Fourth Amendment rights by taking the stand and testifying to what he can remember of defendant's statements. To object to the introduction of the recording under such circumstances amounts to asserting that the defendant has a constitutional right to rely on possible flaws in the witness' memory, or to challenge his credibility without being beset by corroborating evidence that is not susceptible of impeachment. Lopez v. United States, 373 U.S. 427, 439, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). It is difficult to imagine any other argument for excluding an accurate version of a conversation that can and will be testified to from memory.[1]

---

1. The argument that a lawyer's office is a protected zone of privacy (Fahringer supp. aff., ¶ 13) is relevant only to a

*Katz* type of eavesdropping situation, where a recording is made by a Government agent without the knowledge or

Furthermore, defendant will have full opportunity to cross-examine the witness who made the recording when he takes the stand. Any facts or circumstances tending to cast doubt upon either the completeness or the accuracy of the recording can and should be brought out at that time.

### Motion for Discovery of Other Statements Made by Defendant

This motion must be denied as untimely under Rule 16, F.R.Cr.P., and for the further reason that the Government has consented to furnish such statements to defendant.

### Motion for Discovery of "All Other Materials to Which [Defendant] is Entitled Under Rule 16"

■ Except to the extent that the Government has agreed to furnish copies of reports by F.B.I. handwriting experts, this motion is denied as seeking a general disclosure to which defendant is not entitled. United States v. Evanchik, 413 F.2d 950 (2d Cir. July 16, 1969).

### Motion for Discovery of Material "Available to the Accused"

■ This motion is denied as seeking a general disclosure of "the Government's file" to which defendant is not entitled. United States v. Evanchik, supra. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), does not mandate a total disclosure of the Government's files. It requires disclosure only of material having a material and demonstrable relevance to the accused's defense.

### Motion "To Determine Whether Any Electronic Surveillance was Conducted" by the Government, State or Local Authorities

■ Since the defendant fails to support this motion with any basis for be-

lief that there was any such surveillance, it must be denied. United States v. Kelley, 395 F.2d 727, 730 (2d Cir.), cert. denied, 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968). In any event the Government, though carefully declining to establish any precedent, asserts that except for the recording already divulged, it is not aware of any electronic surveillance, lawful or unlawful, of the defendant's premises or conversations.

### Motion for Disclosure of Co-Conspirator, Informants, and Information Furnished by State or Municipal Agencies

■ In the absence of some specific factual or legal showing of a basis for such disclosure, it must be denied on the ground that the defendant is not entitled to such information.

### Motion for Suppression of Stock Certificates

■ The defendant is without standing to complain of any illegality of the seizure of stock certificates from a safe deposit box where they had been placed by their owner, a Pennsylvania insurance corporation, Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Cowan, 396 F.2d 83, 86 (2d Cir. 1968), and the moving papers are clearly insufficient to require a hearing. United States v. Culotta, 413 F.2d 1343 (2d Cir. July 15, 1969). In any event the motion is untimely since it comes 3½ months after the indictment.

### Motion for Disclosure as to the Type of Evidence Presented to the Grand Jury

■ Defendant asks, in order that he may decide whether a motion to dismiss the indictment will lie, that the Government be required to state whether

---

consent of either of the parties to the conversation recorded. The zone of privacy analysis does not apply to a con-

sent situation like that with which we are presented.

the grand jury which returned the indictment had before it any evidence other than hearsay testimony by a Government agent. Defendant is not entitled to such relief. An indictment returned by a duly constituted grand jury is sufficient if valid on its face. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The "indispensable secrecy of grand jury proceedings * * * must not be broken except where there is a compelling necessity." United States v. Proctor & Gamble, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1956). No such necessity has been demonstrated by defendant. Requests for pre-trial inspection of grand jury minutes, with resultant disclosure of the Government's case, are uniformly denied. E. g., United States v. Steel, 238 F.Supp. 580 (S.D.N.Y.1965). There is no reason to suppose that the indictment was based exclusively on hearsay testimony by a Government agent; and even if it was, that would not justify dismissal of the indictment. United States v. Covello, 410 F.2d 536 (2d Cir. 1969).

For the foregoing reasons defendant's several requests for pre-trial relief, to the extent they have not already been consented to by the Government, are denied.

It is so ordered.